IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

**Civil Action No. 3:11-cv-02163-CMC-JRM**

| | | |
|---|---|---|
| Jessica E. Sellers, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | PLAINTIFF'S RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANTS' MOTION TO DISMISS |
| | ) | |
| | ) | |
| South Carolina Autism Society Inc, | ) | |
| Kim Thomas, and Craig C. Stoxen, | ) | |
| as CEO | ) | |
| Defendants. | ) | |
| | ) | |

## I.     <u>INTRODUCTION</u>

Defendants seek to dismiss the Plaintiff's claims of race discrimination in employment and related claims against her former employer based in part on allegedly defective pleadings. Defendants also submit that certain tort claims plead are impermissible as preempted by S.C. Code § 42-1-540 (the "Act"). Plaintiff submits that the Complaint in this matter adequately alleges facts sufficient to sustain Plaintiff's claims for relief and meets the requirements of the State and Federal Rules of Civil Procedure. As all matters have been adequately plead, Plaintiff requests that no cause of action should be dismissed at this time. In the alternative Plaintiff requests leave to amend to cure any deficiencies.

## II.     <u>REMOVAL ISSUES</u>

It is important to note from the outset that Plaintiff initially filed her lawsuit in Lexington County, in the Court of Common Pleas, a state court forum. Pursuant to the South Carolina Rules of Civil procedure and the commensurate case law, the standard for initial pleading is "notice pleading".

South Carolina Rules of Civil Procedure Rule 8(e)(1), provides that the Plaintiff"s pleadings are sufficient if the Plaintiff merely alleges facts where all inferences reasonably deduced there from, would entitle the Plaintiff to relief upon any theory of the case. S.C.R.Civ.P. 8(e)(1); *Brown v Leverette*, 291 S.C., 366, 353 S.E.2d 697, 698 (1987)

The case was removed to this Court and the defense has filed an answer (including 27 affirmative defenses and a Motion to Dismiss which seeks to apply recent Federal case law to the State pleadings, to render them insufficient.  Rule 8, of the Federal Rules of Civil Procedure, ostensibly requires "notice pleading".  However, in  the wake of the Supreme Court's decision in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544,127 S.Ct. 1955 (2007)  and especially *Ashcroft v. Iqbal*, 129 S.Ct 1937 (2009) there has been a movement  to argue that <u>*Iqbal*</u> eliminated notice pleading and requires a new heightened pleading standard under the rubric of "plausibility."  See, e.g., Thomas P. Gressette, Jr., The Heightened Pleading Standard of *Bell Atlantic Corp. v. Twombley* and *Ashcroft v. Iqbal*: A New Phase in American Legal History Begins, 58 Drake L. Rev. 401 (Winter 2010); Adam Steinman, The Pleading Problem, 62 Stan. L. Rev. May 2010), at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1442786.

Should the court rule that a heightened standard applies, and that said standard applies to Defendants' Motion under Rule 12, herein, Plaintiff respectfully requests leave to amend her Complaint so she may have the opportunity to cure any deficiencies as Plaintiff believes justice would be best served by permitting amendment.

### III.     <u>STANDARD OF REVIEW</u>

Traditionally a Plaintiff must merely provide "a short and plain statement of the claim showing that the pleader is entitled to relief",  Fed.R.Civ.P. 8(a)(2).  The liberal pleading standards, adopted in 1938 with the Federal Rules of Civil Procedure, were designed to eliminate

procedural barriers at the beginning of litigation that could prove fatal even to a meritorious claim: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 43 (1957). The dissent in *Twombly* specifically stated that *Conley* should not "interred…without a eulogy." *Twombly* at 577 (Stevens, J., dissenting).

The Defendant asserts that the Supreme Court has changed these rules for all cases, not just the limited circumstances of Twombly. It is now plaintiff's obligation to provide the "grounds" of her "entitle[ment] to relief," which requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 1959 (2007). Arguably the Court must "evaluate the legal sufficiency of a complaint, and determine relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, (2007), and *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)-i.e., whether the complaint on its face states plausible claims upon which relief can be granted." *Francis v. Giacomelli,* 588 F.3d 186, 189, 2009 WL 4348830, 1 (C.A.4, Md. ,2009) The allegations need not pass a probability test as the Court must still assume the allegations are true, but the Plaintiff merely must offer plausible facts "enough facts to raise a reasonable expectation that discovery will reveal evidence . . ." of the causes of action plead. *Twombly* at 545.

The Plaintiff's Complaint alleges plausible facts entitling her to relief each cause of action, thus the Motion to Dismiss, should be denied.

## IV.    THE APPLICATION OF *IQBAL* AND *TWOMBLY* BY THE CIRCUIT COURTS

The various Circuit Courts are still sorting out how to apply *Twombly* and *Iqbal*. The Fourth Circuit has repeatedly held "plausible" to be its standard.  Under *Twombly* and *Iqbal*, the Court must "evaluate the legal sufficiency of [the pleading]." The pleading must provide "enough facts to state a claim to relief that is plausible on its face" *Robinson v. Am. Honda Motor Co. Inc.*, 551 F.3d 218, 222 (4th Cir. 2009).  The Court is not required to "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions or arguments."  *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006).  But to the extent the facts are disputed, the Court still construes them in favor of the nonmoving party.

The sufficiency standard, has been articulated by lower courts as well. In *Lawson v. Haddon,* 2009 WL 2242692 (W.D. Mich. July 16, 2009) the issue before the Court was whether the Plaintiff set forth "sufficient facts. " The court found that plaintiff had alleged sufficient facts to state an Eighth Amendment medical claim without stating what made those facts adequate.  In *Hill v. Sun Healthcare Group, Inc.,*  2009 WL 2058809 (W.D. Tenn, July 8, 2009), the Court found the Plaintiff's claims were found to be somewhat "vague," but "sufficient to 'nudg[e]' her claims 'across the line from conceivable to plausible.'"  In *Lewis v. Jordan,* 2009 WL 3718883 (MDNC 2009), the Court made clear that the "purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action" and that detailed facts are not required. Similarly in *Harman v. Unisys Corp.,* 2009 WL 4506463 (4th Cir. 2009), the Circuit Court reversed dismissal of the Plaintiff's retaliation claim:  "*Assuming Harman's factual allegations are true* [emphasis added], *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d1081 (2007), we cannot conclude, as a matter of law, that Harman failed to allege" facts sufficient to maintain her cause of action for retaliation.

Again Plaintiff is not required, under *Twombly* and *Iqbal,* to prove their case beyond it being plausible. As long as the Plaintiff's complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, then the Defendant's motions should be denied. *See Iqbal*, at 1949. Plaintiff alleges sufficient facts to withstand the Defendant's motions to dismiss.

## V.    NARROW APPLICATION OF *IQBAL* AND *TWOMBLEY*

The Plaintiff submits that the holdings in *Iqbal* and *Twombly* were only intended to apply to the narrow and unique situations in which those rulings were handed down by the U.S. Supreme Court. The Supreme Court has not expanded the holdings farther. *Twombly*, the first case of the two, arose in the very narrow and specialized context of antitrust cases. In fact, the Supreme Court indicated that it grant *certiorari* to specifically determine the pleading standard *for antitrust conspiracy cases.* The narrow holding in the case specifically speaks to the Sherman Act and the need to determine the pleading standard with regard to the Act.

*Iqbal*, which expanded the application of *Twombly¸* was a case arising from the detention of suspected terror suspects in the wake of the 9/11 tragedy. The case dealt with the potentially unconstitutional discrimination experienced by Javaid Iqbal, a Muslim Pakistani citizen, while in United States custody for suspected terrorist activities. The strict standard applied to uphold the dismissal of Iqbal's complaint was a response in large part to the heretofore unknown sense of danger and fear that this country faced after 9/11. The decision, again, is specific in its application: that the Court bases its application of *Twombly* on the needs of the government (in a time of previously unknown terrorism) versus the rights of the individual. Here, in a completely different scenario, Defendant seeks to apply a heightened standard to a matter arising out of violations of employment laws. Plaintiff should not be held to the same rigorous standards as

those pursuing antitrust cases or allegedly unconstitutional discrimination following detention after 9/11.

### VI.    APPLICATION OF *IQBAL* AND *TWOMBLY* DEFENDANT MUST BE HELD TO THE SAME STANDARD AS THE PLAINTIFF IN PLEADING DEFENSES AND MOTIONS

The holdings in *Iqbal* and *Twombly* have led to an epidemic of Motions to Dismiss by defendants; however, the **"**majority of district courts, including courts in the Fourth Circuit, have [also] extended the standard [where they have extended the standard] articulated in *Iqbal* and *Twombly* to a defendant's pleading of affirmative defenses. *Francisco v. Verizon S., Inc.,* 3:09CV-737, 2010 WL 2990159 (E.D. Va. July 29, 2010).

In the Fourth Circuit**,** district courts have required that an affirmative defense be plead in accordance with the *Iqbal* and *Twombly* standard and that that simply means that the defense plead in a way that is intelligible, gives fair notice, and is plausibly suggested by the facts. Such a requirement is in no way inconsistent with Rule 8(a)(2)'s "short and plain statement of the claim" language. Likewise, neither is inconsistent with Rule 8(b)(1)(A)'s requirement that a defendant "state in short and plain terms its defenses to each claim" nor with Rule 8(d)(1)'s requirement that all pleadings be "simple, concise, and direct."

Moreover, by applying the *Twombly-Iqbal* heightened pleading standard to affirmative defenses, a plaintiff, like the defendant, will not be left to the formal discovery process to determine whether the defense exists and may, instead, use the discovery process for its intended purpose of ascertaining the additional facts which support a well-plead claim or defense. *See Holtzman v. B/E Aerospace;, Inc.,* 2008 U.S.Dist. LEXIS 42630, 6 (SDFla.2008) (citing *Stoner*

*v. Walsh,* 772 F.Supp. 790, 800 (S.D.N.Y.1991). *Palmer v. Oakland Farms, Inc.,* 5:10CV00029, 2010 WL 2605179, 5-6 (W.D. Va. June 24, 2010).

Courts have held that is unfair to require a plaintiff to plead under one standard and to permit the defendant to operate under an alternative, less draconian standard. Further, "[b]oilerplate defenses clutter the docket and...create unnecessary work," including expensive and time-consuming discovery. *Safeco Ins. Co. of Am. v. O'Hara Corp.,* No. 08-CV-10545, 2008 WL 2558015 (June 25, 2008). It is these considerations of common sense and efficiency that underlying *Twombly* and *Iqbal* that suggest that their heightened pleading standards should apply not just to the Complaint but to affirmative defenses as well. *Topline Solutions, Inc. v. Sandler Sys., Inc.,* L-09-3102, 2010 WL 2998836 (D. Md. July 27, 2010).

In *Kaufmann v. Prudential Ins. Co. of Am.,* CIV.A.09-10239-RGS, 2009 WL 2449872 (D. Mass. Aug. 6, 2009), the Court held, "the court is inclined to think that a defendant has the same Rule 8 obligations with respect to notice pleading as does a plaintiff." Courts in the Second Circuit have agreed: "Mere conclusory assertions are not sufficient to give plaintiffs notice of the counterclaims and defenses and, thus, do not meet Rule 8(a)'s pleading standards." *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc*., 531 F. Supp. 2d 620, 621 (S.D.N.Y. 2008), *see also Tracy v. NVR, Inc.,* 04-CV-6541L, 2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009) *report and recommendation adopted as modified*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009), (dismissed affirmative defenses under *Iqbal* and *Twombly.*

Similarly, the Seventh Circuit Courts have dismissed affirmative defenses on the premise that more than "bare bones" pleading is required, and that defenses must be stated "in short and plain terms." *Jackson v. Methodist Med. Ctr. of Ill.,* 06-1235, 2007 WL 128001, 2 (C.D. Ill. Jan.

11, 2007).  The claim or defense must state enough to give the opposing party notice of the basis for the claim or the defense. *Twombly, at* 1965.  *Local 165 v. DEM/EX Group Inc.,* 09-1356, 2010 WL 971811, 2 (C.D. Ill. Mar. 11, 2010).  "Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989); *OSF Healthcare Sys. v. Banno*, 08-1096, 2010 WL 431963 (C.D. Ill. Jan. 29, 2010).  If the Federal Rules apply equally, "affirmative defenses must meet pleading standards set forth in Rules 8 and 9",  *Bank of Montreal v. SK Foods, LLC,* 09 C 3479, 2009 WL 3824668 (N.D. Ill. Nov. 13, 2009) *see also*,  *In re Mission Bay Ski & Bike, Inc.,* Nos. 07 B 20870, 08 A 55, 2009 WL 2913438, at 6 (Bankr.N.D.Ill. Sept. 9, 2009), and the case law altering the standards in those Rules must apply equally also.

District Courts have also applied *Iqbal* and *Twombly* to dismiss affirmative defenses: "bare statements reciting mere legal conclusions do not provide a plaintiff with fair notice of the defense asserted."  *See, e.g., Qarbon.com, Inc. v. eHelp Corp.,* 315 F.Supp.2d 1046, 1049-50 (N.D.Cal.2004) (Ware, J.) (striking defenses that did no more than name the defenses without listing their elements or supporting facts); *Solis v. Zenith Capital, LLC,* No. C-08-4854, 2009 U.S. Dist. LEXIS 43350, 8-19 (N.D.Cal. May 8, 2009) (Hamilton, J.) (striking affirmative defenses because no factual bases were provided);  *CTF Dev., Inc. v. Penta Hospitality, LLC*, C 09-02429 WHA, 2009 WL 3517617 (N.D. Cal. Oct. 26, 2009).

In *Tara Productions, Inc. v. Hollywood Gadgets, Inc.,* 09-61436, 2009 WL 4800542, 1 (S.D. Fla. Dec. 11, 2009), a Florida District Court, in striking affirmative defenses, stated a defendant must give the plaintiff "fair notice" of the nature of the defense and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167

L.Ed.2d 929 (2007). Other Florida district courts have acknowledged that without the Defendant alleging facts as part of the affirmative defenses, Plaintiff cannot prepare adequately to respond to those defenses. *Holtzman v. B/E Aerospace, Inc.,* 07-80551-CIV, 2008 WL 2225668 (S.D. Fla. May 29, 2008) *see also*, *Home Mgmt. Solutions, Inc. v. Prescient, Inc.,* 07-20608-CIV, 2007 WL 2412834, at 3 (S.D. Fla. Aug. 21, 2007)

Finally, as the majority of district courts addressing this issue have found, the "same logic holds true for pleading affirmative defenses [as for pleading a complaint] -- without alleging facts as part of the affirmative defenses, [a][p]laintiff cannot prepare adequately to respond to those defenses." *Holtzman,* 2008 WL 2225668, at 2. Many district courts have found that "[i]t makes no sense to find that a heightened pleading standard applies to claims but not to affirmative defenses." *Hayne,* 263 F.R.D. at 649-50." *Francisco v. Verizon South, Inc.* 2010 WL 2990159, 6 (E.D.Va.) (E.D.Va.,2010). Therefore, Plaintff believes that the Defendant is required to meet the same *Twombly* and *Iqbal* standard as the Plaintiff. This includes providing the Plaintiff with fair notice of the defense asserted; not merely alleging legal conclusions or labels. The Defendants' defenses, Defendants asserted 27 affirmative defenses in their Answer, must do more than merely name each defense, list the elements of a defense or state mere conclusory assertions. The Defendant here asserts each affirmative defense in approximately one sentence with no supporting facts. If Plaintiff must plead with plausible factual allegations, then the Defendant must plead affirmative defenses supported by plausible factual allegations, pleading each defense with enough facts to state a claim for relief that is plausible on its face in support of each and every motion they make.

## VII.  PLAINTIFF HAS ALLEGED PLAUSIBLE FACTS FOR EACH CAUSE OF ACTION.

## A. <u>SECTION 1981 CLAIMS AND BREACH OF CONTRACT</u>

As stated by the Defendants, Section 1981 provides: "All persons…shall have the same right…to make and enforce contracts…as is enjoyed by white citizens…" *See also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S. Ct. 1716 (1975) *and* a plaintiff must show that discrimination that interferes with a contractual interest. The statute broadly defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). *See*, *QIHUI HUANG v. Culpepper*, Dist. Court, D. Maryland 2011. Thus, a cause of action under § 1981 "must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Id., citing , Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018 (4th Cir. 1999).

In the Huang case, cited as precedent for dismissal of the Plaintiff's, case the Court stated as follows:

> The only potential rights that could be implicated arise from her contract with Centex for the sale of the property, but it is unclear how the alleged offending conduct relates to the Centex contract. Even assuming there is a causal nexus, **Plaintiff has not set forth any facts which, if proven, would establish that Defendant's alleged misconduct was motivated by discriminatory animus based on her gender, ethnicity, or national origin. Rather, her complaint consists entirely of conclusory allegations that the testimony of Mr. Wilcher and Mr. Tippett was perjured,** that Defendant knowingly procured their false testimony, and that he did so with discriminatory intent. In sum, these allegations "are nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed."…citations omitted... Accordingly, Plaintiff's § 1981 claim cannot be sustained.

Ms. Sellers case is dissimilar. In addition the decision is *Huang* appears to have been founded on extensive discovery and depositions taken, as a result of which the injured party still could not adequately articulate her claims in a sufficient matter.  Here we are limited to the

review of one state complaint on a motion to dismiss which appears to be much more

substantive. Defendants nevertheless allege that Plaintiff fails to make factual assertions other

than the "formulaic recitation of the elements" of her breach of contract claim, but admits that

Plaintiff alleges:"Defendants' termination and unequal discipline of Plaintiff constitutes a breach

of the Plaintiff's employment agreement."

Plaintiff submits that any complaint or pleading can be improved, but submits that there

is adequate pleading of a contractual employment relationship. Plaintiff delineates tiwth

specificity and employment relationship and  contends that she was discriminated against in the

terms and conditions of that contractual employment relationship, adequate allege a plausible

cause of action for a violation of Section 1981 claim and  breach of contract.

To maintain brevity Plaintiff has attached a copy of her Complaint hereto but calls the

Court to the following paragrphs which plaintiff believes are adequate to sustain her claims of

breach of contract and  under Section 1981:

6.      Plaintiff pleads that she was employed by the Corporate Defendant

9,12    Plaintiff reiterates that she was employed by the Defendant and hired on or about

        October 25, 2007, and hired by Edwina Jackson.

10.     Plaintiff pleads that she is African- American.

11-17.  Plaintiff pleads that she was promoted, accepted additional duties  and received an

        increase in pay. Plaintiff lists the duties and responsibilities that she has to

        perform in the course of her employment.

18-45   Plaintiff details allegations of discrimination in the terms and conditions of her

        employment, and delineates wrongful actions by supervisor  Kim Thomas with

        specificity, these included  requiring  Plaintiff to have additional hours, more

files, undesirable assignments,  under go greater scrutiny, experience retaliation for pointing out deficiencies of Caucasian employees, receiving conflicting instructions, being the victim of "lost" leave requests, termination of  other minority workers, unequal treatment with regard to leave and absences and calling in procedures,  unequal training, unequal compensation and falsification of records, and being the victim of derogatory racial slurs  and  forced isolation in the work place all with the knowledge of supervisory personnel.

51.     Employment terminated on 1/5/09.

61-62  and  68-74 Allegation of denial or African American employees, specifically Plaintiff equal terms and conditions in employment compared to white employees, termination and discipline  out of compliance with Defendants rules and relations, being and out of compliance with Defendants policies and procedures in violation of plaintiff's  employment agreement.

72.     Contains an allegation that all the forgoing constitute a breach of the employment agreement.

Plaintiff submits that the paragraphs forgoing outline facts sufficient upon which to base a claim for a violation of Section 1981 and breach of contract

Defendants further argue that this action cannot lie as Plaintiff did not allege that she is either an employee for a definite time or an employee at will. Defendant cites *Prescott v. Farmers Telephone Cooperative, Inc.*  Prescott however alleged that he was hired as an employee of definite duration who could only be terminated for cause.  The court discussed at length that employees in South Carolina are presumed to be employees at will. However this can be altered by numerous circumstances, such as via a handbook setting forth progressive

discharge Procedures or the provision of consideration in addition to services. *See Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987); *Weber v. Perry*, 201 S.C. 8, 21 S.E.2d 193 (1942).

General contract law provides that a "contract exists when there is an agreement between two or more persons upon sufficient consideration either to do or not to do a particular act." *Carolina Amusement Co., Inc. v. Connecticut Nat. Life Ins. Co.*, 313 S.C. 215, 220, 437 S.E.2d 122, 125 (Ct. App. 1993), *quoting Benya v. Gamble*, 282 S.C. 624, 628, 321 S.E.2d 57, 50 (Ct. App. 1984). A contract may arise from oral or written words or by conduct. *Gaskins v. Blue Cross-Blue Shield of South Carolina*, 271 S.C. 1011 245 S.E.2d 598 (1978). A contract altering the at-will arrangement may arise, in part, from the oral statement of the employer. See also *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 453 S.E.2d 885 (1995).  The court thus ruled after considering **testimony, depositions and discovery** that Plaintiff Prescott had not established a contract.

Here there is no testimony, deposition or discovery. In addition this is not strictly a termination case as was Prescott. Jessica's case is also a "terms and conditions" case. See Complaint Paragraph 72. When the Complaint is read as a whole it is clear that Plaintiff alleged sufficiently that she was treated differently and discriminatorily in the terms and conditions of her employment, inconsistent with Defendants policies and procedures and her civil rights, and as such in violation of the Party's employment agreement (also known as a contract). See paragraphs 63-67 of the Complaint.

There are also exceptions (listed in the Prescott case) to the "employment as will doctrine."  An employer may not discharge employee in violation of procedures set forth in

employee handbook ( *Id., citing Small v. Springs Industries, Inc*., 292 S.C. 48t, 357 S.E.2d 452 (1987).  An at-will employee may not be discharged in violation of a clear mandate of public policy (*Id., citing,  Ludwick v. This Minute of Carolina, Inc*., 287 S.C. 219, 337 S.E.2d 213 (1985).  An at-will employee may not be terminated for exercising constitutional rights (*Id., citing, Moshtaghi v. The Citadel*, 314 S. C. 316, 443 S.E.2d 915 (Ct. App. 1994).  Plaintiff has set forth in the Complaint allegations of violations of public policy, termination and retaliation as a result of her attempt to exercise her civil rights and policy and procedure violations.

As such Plaintiff argues that she has made sufficient allegations regarding the existence of a contract in the Complaint when read as a whole and thus Plaintiff's allegations under Section 1981 and for breach of contract should not be dismissed.  Should the Court find any errors or omissions the Plaintiff requests leave to amend.

## B.  PREEMPTION

Defendants assert that Plaintiff's tort claims are barred by the Workers' Compensation Act and if not are insufficiently plead. Plaintiff asserts that these acts are not barred, and are plead sufficiently, such that coverage (if in dispute) is a question of fact.

A work place injury is not covered by the South Carolina Workers Compensation Act unless there is (1) an injury, either physical or mental, (2) created by accident, and (3) arising out of employment.  *Dickert v. Metropolitan Life Ins. Co.* 306 S.C 311, 411 S.E.2d 672*, Dickert v.Metropolitan Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993).  Only cases where the injury is caused by an accident are within the jurisdiction of the South Carolina Workers' Compensation Commission.  An employee therefore can maintain a separate common law action

for the employer's intentional outrage or the intentional infliction of emotional distress when an incident fails to fall within the parameters of the Workers' Compensation Act.

Section 42-1-540 bars all common law actions against an employer for "accidental" personal injury. S.C. Code Ann. §42-1-540; *see also Cook v. Mack's Transfer & Storage*, 291 S.C. 84, 352 S.E. 2d 296, 298 (S.C. App. 1986) cert. denied, 292 S.C. 230, 355 S.E. 2d 861 (S.C. 1987) (stating that the exclusivity provision of the Act "bars all actions against an employer where a personal injury to an employee comes within the Act... [making] the Act the exclusive means of settling all such claims") In the present case, plaintiff alleges intentional acts against the Plaintiff by Defendants.

When an injury is inflicted by an employer who acts with a specific intent to injure, the resulting injuries are exempted from the exclusive remedy of workers' compensation coverage. *Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993), *Stewart v. McLellans Stores*, 194 S.C. 50, 9S.E.2d35 (1940). The Plaintiff alleged that she was subjected to specific and continued discrimination, harassment and abuse by supervisory employee with the knowledge of higher ups and as such the corporate entity. She further alleged that her emotional distress at least in part, occurred as a result of her termination, effectively alleging that it did not occur within the scope of her employment. *See, Futia v. Palmetto Behavioral Health*, 317 F.Supp.ed 638 (SCDC 2004),. In addition, the acts as alleged do not constitute an 'accident' and thus are not intended to be covered by Workers' Compensation. The acts exclusivity provision does not bar suits for which the Act provides no remedy. *Id; see also, Peay, supra*.

The Worker's Compensation Act may not be used as a shield for intentional injurious conduct. When abusive conduct is committed by the manager of the corporation, he is an alter ego of the employer. *Stewart,* 194 S.C. 50, 9 S.E.2d 35 (1940). An employee is not precluded

from suing his employer at common law if the employer or an "alter-ego" of the employer commits an intentional tort against the employee because "the intentional and outrageous nature of the act removes it from the realm of an 'accidental' injury. *Stewart v. McLelan Stores*, 194 S.C. 50, 9 S.E.2d 35 (1940). An alter ego of corporation is defined as a dominant corporate owner or officer of a corporation. *Dickert v. Metropolitan Life Ins. Co.,supra.. See also Andrews v. Peters*, 55 N.C. App. 124, 284 S.E.2d 748 (1981); disc. rev. denied 305 N.C. 395, 290 S.E.2d 364 (1982).

Here the Plaintiff has alleged the torts of negligence, intentional infliction of emotional distress and outrage, as well as defamation. The question of an intentional act is one for a trier of fact. The burden of proof therefore rests upon the party seeking to assert the exception. The asserting party must show therefore that the acts of the employee are so serious and aggravating as to evidence a wilful intent to injure. Wilful intention (as used in the statute) means with a deliberate or formed intention. *Reeves v. Carolina Foundry & Machine Works*, 194 S.C. 403, 9 SE 2nd 919 (1940). Again, as stated above, if the conduct is so outrageous or of such a grave or serious nature as to evidence a wilful intent to injure, the worker's compensation statute would not apply. *See, Zeigler v. S.C.L.E.D.*, 250 at 329, 157 SE 2d at 599. *See also, Youmens v. Coastal Petroleum Co.*, 333 SC 195 (S.C. App 1998).

Some cases cited by the defense as barring outrage or intentional infliction claims are cases which failed on summary judgment or involve lower level employees. Jessica Sellers' case involves discriminatory conduct by supervisory personnel and involves a motion to dismiss and not for summary judgment and thus the standard of review differs. For example *Taylor v. Cummins Atlantic, Inc.,* cited by the defense was a summary judgment motion. In that case the Plaintiff neither addressed the defense's allegations nor was able to show intent or alter ego

evidence to the Court after extensive discovery.  In *Taylor* the plaintiff failed to address the preemption issues in his summary judgment brief at all. Thus the claim was barred.

With regard to other acts of negligence, *Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538 (S.C. 1992) permits an employee to maintain a common law action for negligent supervision against an employer for a co-employee's alleged slander.  The court determined that a slander action did not constitute a personal injury claim and, thus, was not barred by the Act's exclusivity provision "since the gravamen of a slander action is injury to one's reputation." Plaintiff here not only pleads libel and slander but much of the substance of her negligence claim is based on negligently disseminating misleading and inaccurate information. See Complaint at paragraph  83-87. As such it is properly plead and should not be excluded by the Act.

Defense also alleges that in absence of preemption Plaintiff has not alleged conduct awful enough to constitute outrage, citing *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1276 (4th Cir. 1994), a summary judgment matter with dissimilar facts. *Barber* ruled that summary judgment should have been granted where the <u>only act</u> that could have been considered under the claim of outrage was one 40 minute meeting where Plaintiff got yelled at.  *Gattison* also cited by the defense, involves a case that went to trial, and on appeal the court ruled that allegations that Plaintiff could not take notes, got late notice for meetings and had to sit in a small chair were not enough to constitute outrage and <u>Summary Judgment</u> should have been granted.

Here the Defendants have filed  a motion to dismiss. Plaintiff has clearly alleged conduct which constitutes a pattern and practice of discrimination, not mere unprofessionalism but thinly disguised racial bias.  In employment matters the court may look to abusive conduct by one with real or apparent authority over the plaintiff (ie one with power to deny the Plaintiff her

livlihoood) and such conduct in that context may give raze to a characterization of to conduct as outrage. *See Todd v. SC Farm Bureau,* 283 SC 115, 321 SE2d 602 (Ct. App. 1984), *rev'd on other grounds* 287 SC 190, 336 SE2d 472 (SC 2005). Plaintiff has alleged that offending parties had enormous power over her and engaged in actions unacceptable to normal society and which should not and cannot be tolerated. Plaintiff 's submits that her claims are well articulated and the alleged conduct outrageous enough under the bounds of normal society and decency to comply with the rules of this Court**.**

## C.  PLAINTIFF'S RETALIATION CLAIM IS BASED ON THE VIOLATION OF ACLEAR MANDATE OF PUBLIC POLICY

In *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985), the South Carolina Supreme Court created a limited exception to at-will employment when the discharge of an employee violates a "clear mandate of public policy."  In *Barron v. Labor Finders of South Carolina*, 384 S.C. 21, 682 S.E.2d 271 (Ct.App. 2009) further held that this exception "*generally* applied in a situation in which an employer requires an employee to violate a law." (emphasis added)  Defendant provides a long list of cases addresses whether a criminal law is violated; however, here the Defendant violates not a criminal law, but Title VII and State of South Carolinas "sister act" The South Carolina Human Affairs law S.C. Code Ann. 1-13-10, et. seq.  and of 42 U.S.C. §1981 ("Section 1981").

Section 1981, prohibits racial discrimination in the formation of contracts, and states that "all persons" shall have the same right "to make and enforce contracts as is enjoyed by white citizens."  Employment matters fall within the ambit of the statute. Similarly Title VII forbids employer actions that "discriminate against" an employee and specifically prevents discrimination because he has "opposed" a practice that Title VII forbids or has "made a charge,

testified, assisted, or participated in "a Title VII" investigation, proceeding or hearing. 42 U.S.C.

§ 2000e-3(a)." *Burlington Northern v. White*, 126 S. Ct., 2405, 2410 (2006). For example, if an

employee "opposed" a practice (unequal discipline) made unlawful by Title VII, he has the right

to utilize a complaint procedure put in force by the employer or by law to ensure compliance

with Title VII, and not be penalized for his actions. The anti-retaliation provision seeks to secure

the primary objective [to seek a work place where individuals are NOT discriminated against

because of their gender] by preventing an employer from interfering (through retaliation) with an

employee's efforts to secure or advance Title VII's  basic guarantees. *Burlington Northern v.*

*White,* 126 U. S. 2405, 2412 (2006).

Plaintiff engaged in activity by complaining about acts prohibited by Federal Law as

articulated in the complaint (paragraph 42) and even filed a Complaint with the EEOC. She has

alleged that she experienced negative employment actions and retaliation after engaging in

protected activity- filing an internal complaint regarding racial bias, disparate treatment,

stereotyping and  hostile environment in 2008 (Complaint at paragraph 42-51). Her ultimate

termination was punishment for engaging in and attempting to retain her civil rights and thus she

has alleged that sufficiently that her discharge of a violates a "clear mandate of public policy."

As such Plaintiff submits that she has alleged facts sufficient to retain this cause of action.

With regard to Defendants claims of redundancy or the use of alternative theories

Plaintiff asserts that she cannot be faulted for advancing alternative theories. *See generally*, *Red*

*Cardinal Fifteen, Inc. v. Chang,* 954 F. Supp. 1111 (DCSC 1995). *See also Williams-Garrett v.*

*Murphy*, 106 F. Supp. 2d 834 (DCSC 2000) which notes that, "a party is entitled to plead

alternative theories of relief, but simply may not recover for both. *Save Charleston Foundation v.*

*Murray*, 286 S.C. 170, 333 S.E.2d 60, 64 (SC App.1985).

## D. <u>DEFAMATION CLAIM</u>

.

The case of *Parrish v. Allison*, 276 SC 308, 320-321, 656 SE2d 382 (S.C. Ct.App. 2008), reviews South Carolina law on the tort of defamation and allows a plaintiff to recover for injury to her reputation as the result of the communications to others of a false message about the plaintiff. *Holtzscheiter v. Thomson Newspapers, Inc*., 332 S.C. 502, 508, 506 S.E.2d 497, 502 (1998); *Marray v. Holnam, Inc*., 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct.App.2001). Defamatory communications take two forms: libel and slander. *Holtzscheiter*, 332 S.C. at 508, 506 S.E.2d at 502. To recover plaintiff must establish (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged communication; (3) fault on the defendant's part in publishing the statement; and (4) either actionability of the statement irrespective of special harm or the existence of special harm to the plaintiff caused by the publication. See *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002), *Parrish v. Allison*, 276 SC 308,656 SE2d 382 (S.C. Ct.App. 2008).

Defendant claims that the facts plead, in conjunction with others in the complaint are not enough to sustain a claim of defamation. *Iqbal* does suggest that Plaintiff must plead context specific material. The Fourth Circuit in *Nemet Chevrolet, Ltd. v. Consumeraffairs. com, Inc*., 591 F. 3d 250(4th Cir. 2009) explains that the "context-specific" test does not require "detailed factual allegations." *Iqbal* . at 1949-50 (quotations omitted). The complaint must, however, plead enough facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Iqbal* . at 1950.

Plaintiff has alleged that her former co-workers and superiors, made false and injurious statements about her via phone, email, written documents and letters and spread those statements throughout the community and among themselves, as well as to potential employers. Plaintiff has

articulated a lack of privilege and alleged that Defendants attacked her reputation, accused her of

unprofessional conduct, payroll and hours irregularities, having poor client services, having

complaints from staff and with clients and engaged in post termination cultivation and collection

of negative statements regarding her professional abilities with autistic clientele and families. As

a result of the dissemination of prejudicial and allegedly racially biased comments and reviews,

Plaintiff alleges that she was unable to obtain employment after her termination.  Plaintiff further

asserts that these are false statements and articulated throughout the community, leading to

monetary loss and emotional pain and suffering.

False accusations of dishonesty are inherently libelous.  Defendant has not articulated

plausible claims of fraud or dishonesty on the part of Plaintiff. Libel is a fact based claim, as

such there exists a clear issue of the facts underlying Plaintiffs cause of action for defamation. As

such Plaintiff's claims should not be dismissed at this time. If the court feels that the action has

been insufficiently plead the Plaintiff  requests the opportunity to amend her complaint.

### E.  <u>TORTIOUS INTERFERENCE</u>

Pursuant to *Crandall Corp. v. Navistar International Transportation Corp*., 395 SE 2d 179 –

(SC 1990), in South Carolina to recover for intentional interference with contractual relations, a

Plaintiff must show: (1) intentionally interference with the plaintiff's potential contractual

relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff.

*Citations omitted*. "If a defendant acts for more than one purpose, his improper purpose must

predominate in order to create liability." *Id., citing in part, Harsha v. State Savings Bank*, 346

N.W. (2d) 791 (Iowa 1984). 'As an alternative to establishing an improper purpose, the plaintiff

may prove the defendant's method of interference was improper under the circumstances."*Id., citing Duggin v. Adams*, 234 Va. 221, 360 S.E. (2d) 832 (1987).

Plaintiff alleged that she was had an employment relationship ( a contract) with the plaintiff and had a good reputation, positive reviews until her interaction with Defendant Thomas. See Complaint at Paragraph 53.  She was in fact promoted and given additional duties and responsibilities based on her skills.  See Complaint Paragraphs 13, 14. Thomas and Stoxen had knowledge of her prior good performance. Plaintiff has alleged that Thomas sought to systematically terminate the African American members of her team-formerly that of Edwina Jackson. Paragraphs 12, 18, 20, 22, 35, 36.  Plaintiff has also alleged that Thomas began to improperly and negatively document Plaintiffs disciplinary records, setting her up for a termination "for cause". Paragraphs 27-34, 40.46-51. Plaintiff alleged that Defendants, post termination induced the production of negative statements from a client (paragraphs 55). Plaintiff alleged that these were wrongful acts were done with the intent to exclude her from career advancment and employment in the community. Paragraphs 88-91. She alleged deliberate and willful harm and alleges emotional and financially injury. Id.  Plaintiff has not been able to find a job in her field.

Given the forgoing allegations, plaintiff asserts that she had alleged acts sufficient to prevent dismissal, but if not requests leave to amend her complaint.

## **CONCLUSION**

Plaintiff has alleged plausible facts in her Complaint as to each of the elements of her causes of. As such, the Plaintiff respectfully requests the Defendants Motion To Dismiss be DENIED. In the

alternative, Plaintiff respectfully requests leave to amend her Complaint so she may have the

opportunity to cure any deficiencies in the now "Federal Case."

**JENNIFER MUNTER STARK, ESQ**.

s/Jennifer  Munter Stark
Federal Bar #9364
501 Folly Road
Charleston, SC  29412
(843) 795-2525
(843) 795-2545
jmunterstarklaw@gmail.com

Dated: September 6, 2011
Charleston, South Carolina