IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| JESSICA E. SELLERS, | ) Civil Action No. 3:11-2163-CMC-JRM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA AUTISM SOCIETY, INC., KIM THOMAS; AND CRAIG C. STOXEN, AS CEO, | ) |
| Defendants. | ) |

Plaintiff, Jessica E. Sellers, filed this action in the Court of Common Pleas for Lexington County, South Carolina on July 7, 2011. Defendants, the South Carolina Autism Society, Inc. ("SCAS"), Kim Thomas ("Thomas"), and Craig C. Stoxen ("Stoxen"), removed the action to this Court on August 16, 2011. Plaintiff alleges claims under 42 U.S.C. § 1981,[1] as well as claims under South Carolina law. Defendants filed a motion to dismiss on August 17, 2011. Plaintiff filed a response in opposition on September 6, 2011, and Defendants filed a reply on September 13, 2011.

**FACTS**

1.  SCAS is a non-profit corporation which services individuals and the families of individuals suffering from Autism. ¶¶ 5 and 11.[2]

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Local Civil Rule 73.02(B)(2)(g) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] All references in this "Facts" section are to Plaintiff's Complaint.

2. Plaintiff, an African-American female, was employed by SCAS from October 25, 2007 through January 5, 2009. ¶¶ 9, 51.

3. Stoxen was the Chief Executive Officer ("CEO") of SCAS, and Thomas (a white female) was the Director of Service Coordination. ¶¶ 3, 12.

4. Plaintiff was given extra work duties, had her time cards falsified, was accused of doing personal business on work time and work computers, was harassed about her whereabouts by her supervisor, had her files monitored and scrutinized, received a negative performance evaluation, and was terminated. ¶¶ 17, 27-29, 41, 49, 50.

5. She has been unable to find similar employment since her termination and in "the course of applying for positions [she] has been advised that her termination has rendered her less employable." ¶¶ 57-58.

6. Plaintiff has suffered from extreme emotional trauma, depression, and distress. ¶ 59.

## STANDARD FOR MOTION TO DISMISS

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,"

a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Plaintiff argues that Federal Rule 8, as interpreted by Twombly and Iqbal, is not applicable here because this action was removed from state court. She, however, has provided no authority to support her argument that state procedural law, rather than federal procedural law, is applicable here. The federal rules "govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. "These rules apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). Although South Carolina substantive law applies to Plaintiff's state law claims, the Federal Rules of Civil Procedure govern procedural law and South Carolina "pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law." Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003) (citations omitted); see Bartlett v. Frederick County, 246 F. App'x 201, 203 n. 2 (4th Cir. 2007)(applying the Fed.R.Civ.P. 9 pleading standard to a removed state court complaint).

Plaintiff also argues that Iqbal and Twombly were only intended to apply to the unique situations such as the detention of suspected terror suspects (in the wake of the September 11 tragedy) and antitrust cases. Again, she provides no authority to support her argument. As noted by Defendants, Iqbal and Twombly are routinely applied in employment discrimination cases in this Circuit. See, e.g., Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 191 (employment claims

under Title VII and the Family Medical Leave Act), cert. granted, 131 S.Ct. 3059 (2011);[3] Templeton v. First Tennessee Bank, N.A., 424 F. App'x 249, (4th Cir. 2011)(Title VII retaliation claim).

Plaintiff also argues that if Fed. R. Civ. P. 8, Iqbal, and Twombly apply to her claims, Defendants' answer should be held to the same standard. To the extent that Plaintiff seeks to disallow certain defenses in Defendants' answer, the proper way to do so would be to file a motion to strike pursuant to Rule 12(f),[4] rather than a motion pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff has not filed a motion to strike and thus did not file a motion to strike within 21 days of being served with the answer. Although, as argued by Plaintiff, some district courts have applied Twombly and Iqbal to defenses in an answer, she fails to show that the United States Supreme Court or the Fourth Circuit Court of Appeals has done so. Thus, it is recommended that the Court decline to apply the doctrine to defenses in an answer at this time.

## **DISCUSSION**

Plaintiff alleges that: (1) Defendants discriminated against her in violation of § 1981 by denying her equal terms and conditions of employment to white employees; (2) Defendants' actions subjected her to intentional infliction of emotional distress (also known as "outrage"); (3) Defendants breached a contract by unequally disciplining and terminating her; (4) Defendants retaliated against

---

[3]The appeal concerns the self-care provision of the Family Medical Leave Act.

[4]This rule provides:
**Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
    (1) on its own; or
    (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.
Fed. R. Civ. P. 12(f).

her for complaining about discrimination and disparate treatment by unlawfully discharging her in violation of public policy; (5) Defendants defamed her; (6) Defendants intentionally interfered with her potential contractual relations; and (7) Defendants' actions constituted negligence. Defendants contend that their motion to dismiss should be granted because: (1) Plaintiff's claim under § 1981 fails because Plaintiff has not alleged the existence of an employment contract with any of the Defendants; (2) claims for outrage and negligence are preempted by the exclusive remedy found in the South Carolina Workers' Compensation Act ("SCWCA"), S.C. Code § 42-1-540, and Plaintiff has not alleged facts sufficient to take the claims outside the scope of the SCWCA; (3) Plaintiff's outrage allegations do not evidence severe and outrageous conduct; (4) Plaintiff has not alleged sufficient facts to support her claim for breach of contract; (5) Plaintiff fails to assert the necessary elements to establish a claim for wrongful discharge in violation of public policy ("WDPP") and she has an adequate statutory remedy; (6) Plaintiff fails to state a claim for WDPP against Thomas and Stoxen individually because she does not allege that either employed her; (7) Plaintiff fails to state a claim for defamation or defamation per se; and (8) Plaintiff has failed to allege sufficient facts to support a claim for tortious interference with prospective contract.

    A.    <u>§ 1981 and Breach of Contract Claims (First and Third Causes of Action)</u>

Plaintiff alleges that Defendants discriminated against her in violation of § 1981 by denying her equal terms and conditions of employment as white employees. She also alleges that Defendants breached a contract under South Carolina law. Plaintiff claims she "was terminated without cause, out of compliance with Defendant's policies and procedures and in a manner inconsistent with the treatment of similar white employees in violation of Defendant's policies (and as such in violation of Plaintiff's employment with the Defendant)." Complaint, ¶ 71. She contends

5

that her termination and unequal discipline constitutes a breach of her employment agreement. Id. ¶ 72. Defendants contend that Plaintiff fails to state a claim under § 1981 and fails to state a claim for breach of contract because she has not asserted the existence of a contract between herself and any of the Defendants. They further argue that Plaintiff has not alleged that Stoxen or Thomas employed her.

Section 1981 provides a cause of action against public and private defendants who have discriminated against an individual based on race in the making and enforcement of contracts. Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981. There must be an actual or prospective contractual relationship in order for there to be a violation of § 1981. The Supreme Court, in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006), held that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" Id. at 479-480.

Review of the Complaint fails to reveal any factual assertions by Plaintiff about an alleged contract with any Defendant. Her only references to a contract appears to be that "Defendants' termination and unequal discipline of Plaintiff constitutes a breach of the Plaintiff's employment agreement." Complaint, ¶ 72. She, however, has not specified the nature of this alleged employment agreement, the parties to the alleged agreement, the date of the alleged agreement, the terms of such agreement, or the contents of the alleged agreement. See Perrine v. G4S Solutions (USA), Inc., No. 2:11-1210-RMG, 2011 WL 3563110, at *2 (D.S.C. Aug. 9, 2011)("[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim

for breach of a contract employment, a Plaintiff must 'plead sufficient factual allegations to establish an employment contract beyond the at-will relationship....'"), quoting Amason v. P.K. Management, LLC, No. 3:10-1752-JFA, 2011 WL 1100169, at *6 (D.S.C. Mar. 23 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)(In South Carolina, "there is a presumption of at-will employment"). Even in the "Factual Background" section of her complaint, Plaintiff has only alleged in very general and conclusory terms that a performance review was added to her "file" in contravention of Defendants' policies and procedures. Complaint, ¶ 49. These allegations do not establish the existence of an employment contract.

In her opposition memorandum, Plaintiff appears to argue that her at-will status was changed perhaps by a handbook or some policies or procedures. She fails, however, to cite to any specific policy or procedure that supposedly altered the at-will arrangement and was thereafter breached by Defendants.[5]

B.   Outrage and Negligence (Second and Seventh Causes of Action)

Plaintiff alleges that Defendants acted negligently, willfully, wantonly, recklessly, grossly negligently, and intentionally; were fully aware of the severe emotional trauma that Plaintiff would suffer; and caused acts to be done against Plaintiff that caused her emotional distress and outrage. In her negligence claim, Plaintiff alleges that Defendants breached "a duty to ascertain the truth and not disseminate falsehoods or misleading statements." Complaint, ¶ 94. Defendants

---

[5]If Plaintiff's sole federal question claim (§ 1981 claim) is dismissed, it may be appropriate to remand the remaining state law claims to the State court. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988); Hinson v. Norwest Fin. SC, Inc., 239 F.3d 611 (4th Cir. 2001).

contend that Plaintiff's claims for outrage and negligence are preempted by the SCWCA, and that Plaintiff has not alleged facts sufficient to state a claim of outrage.[6]

Under the SCWCA, an employee's claims for intentional infliction of emotional distress and negligence against an employer are barred by the exclusive remedy provided under the SCWCA. See S.C. Code Ann. § 42-1-540; Dickert v. Metropolitan Life Ins. Co., 411 S.E.2d 672 (S.C.Ct.App. 1991), aff'd in part and rev'd on other grounds in part, 428 S.E.2d 700 (S.C. 1993); Taylor v. Cummings Atlantic, Inc., 852 F. Supp. 1279 (D.S.C. 1994), aff'd, 1995 WL 88957, 48 F.3d 1217 (4th Cir. March 6, 1995)[Table], cert. denied, 516 U.S. 864 (1995)(SCWCA provided former employee with exclusive remedy against employer for claim of intentional infliction of emotional distress).

Plaintiff appears to argue that her claims are not covered by the SCWCA because what happened to her was not the result of an "accident," but resulted from an intentional act. The South Carolina Supreme Court, however, has specifically held that claim for intentional infliction of emotional distress and negligence arising out of employment are subject to and barred by the SCWCA. See Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993)(Intentional infliction of emotional distress is within the scope of the SCWCA); Sabb v. South Carolina State University, 567 S.E.2d 231 (S.C. 2002)(Negligence claims by employee against employer arose out of and in the course of her employment, and thus, the SCWCA provided the exclusive remedy for her); see also McClaine v. Pactive Corp., 602 S.E.2d 87, 89 (S.C.Ct. App. 2004)("[I]ntentional

---

[6]To recover for a claim of outrage under South Carolina law, a plaintiff must demonstrate that the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency, and that the emotional distress suffered by the plaintiff was so severe that "no reasonable [person] could be expected to endure it." See Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 74 (S.C. 2011); Ford v. Hudson, 276 S.E.2d 776, 778 (S.C. 1981); Wright v. Sparrow, 381 S.E.2d 503, 505 (S.C.Ct. App. 1989).

8

infliction of emotional distress constitutes a personal injury that falls within the scope of the [SCWCA].").

Plaintiff appears to allege that her allegations fall outside the SCWCA because Thomas and Stoxen are alter egos of SCAS. Under circumstances where an intentional tort is committed by the employer or a tortfeasor is an "alter ego of the employer, employer liability may fall outside the scope of the Act." Peay v. U.S. Silicia Co., 437 S.E.2d 64 (S.C. 1993) ("only those injuries inflicted by an employer who acts with a deliberate or specific intent to injure are exempted from the exclusive remedy of the workers' compensation coverage."); see also Stewart v. McLellan's Stores Co., 9 S.E.2d 35 (S.C. 1940).

Plaintiff fails to assert facts that plausibly show that Thomas, her supervisor, is an alter ego of SCAS. The South Carolina Supreme Court has expressly declined "to extend the definition of alter ego to supervisory employees such as office manager and [held] that only 'dominant corporate owners and officers' may constitute alter egos." Dickert, 428 S.E.2d at 701.

It is plausible that CEO Stoxen is an alter ego of SCAS. Plaintiff, however, fails to assert sufficient facts to state a plausible claim for outrage or negligence against Stoxen. The only mention of Stoxen in her Complaint is that Plaintiff complained to Stoxen "regarding disparate treatment, racial bias, stereotyping, stress and hostile work environment." Complaint ¶ 43.

C. WDPP (Fourth Cause of Action)

In Plaintiff's WDPP claim, she alleges she was retaliated against for complaining about discrimination and disparate treatment, and for utilizing the grievance procedure. Complaint, ¶ 77. She claims her termination was retaliatory and in violation of the public policies of South Carolina and the United States. Id. ¶ 80. Defendants contend that Plaintiff cannot bring a claim for

WDPP as she has not shown that she was discharged because she refused to do something that violated criminal law or the act of terminating her constituted a violation of criminal law. They also argue that such a claim cannot be brought against an individual manager.

"Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985). In Ludwick, the employee was discharged from her employment because she chose to testify before the South Carolina Employment Security Commission (and avoid criminal penalties for failing to testify) pursuant to a subpoena. Id. at 214, 216. The Fourth Circuit has stated that the Ludwick exception is to be narrowly applied. Merck v. Advanced Drainage Sys., 921 F.2d 549, 554 (4th Cir. 1990). The South Carolina Supreme Court has only recognized public policy claims in cases where an employer forced an employee to violate the law such as in Ludwick, or the termination itself was a violation of criminal law such as in Culler v. Blue Ridge Elec. Coop., Inc., 422 S.E.2d 91 (S.C. 1992).

Here, Plaintiff fails to show that the public policy theory should apply because she has not shown that Defendants forced her to violate the law or that her termination itself was in violation of criminal law. In her response, Plaintiff appears to argue that Defendants' actions violated public policy because they violated Title VII and/or the South Carolina Human Affairs Law. Plaintiff, however, does not allege such claims in her complaint. Additionally, in Epps v. Clarendon County, 405 S.E.2d 386 (S.C. 1991), the Supreme Court of South Carolina declined to extend the public policy exception of Ludwick where an employee already had "an existing remedy for a discharge [Epp's claim that he had been terminated in violation of his constitutional right to free speech and association was actionable under 42 U.S.C. § 1983] which allegedly violates rights other than the

10

right of employment itself." Id. at 387, see also Lawson v. South Carolina Dep't of Corrs., 532 S.E.2d 259, 261 (S.C. 2000)(where statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory right); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992).

      D.      Defamation/Defamation Per Se (Fifth Cause of Action)

Plaintiff alleges that Defendants published defamatory statements including telephone conversations, letters, and written documents to potential employers and others in the federal contracting community which defamed her. Defendants contend that Plaintiff's bare allegations are not sufficient to state a claim. In particular, they argue that Plaintiff fails to identify the speaker, the alleged derogatory statements made, why these statements were not privileged, and the damages caused.

The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff. Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 501 (S.C. 1998). Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct. Id. If a communication is libelous, then the law presumes the defendant acted with common law malice. Id. Under South Carolina law, to state a cause of action for defamation, a plaintiff must show the existence of some message that (1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages.[7]

---

[7]An allegedly defamatory statement can either be "actionable per se" or "not actionable per se." Holtzcheiter, 506 S.E.2d at 510. A statement that is actionable per se does not require proof of (continued...)

11

Parker v. Evening Post Pub. Co., 452 S.E.2d 640, 644 (S.C. Ct. App. 1994), cert. denied, 516 U.S. 1172 (1996).

Here, Plaintiff has merely summarily asserted the elements of her claim. She fails to identify the alleged speaker, the alleged statement(s) made, the alleged third party or parties who heard the statement(s), why the statement(s) were not privileged, and the damage allegedly caused. Such threadbare recitals of the elements of her defamation claim(s) are insufficient and thus these claims should be dismissed.

  E. Tortious Interference with Prospective Contract (Sixth Cause of Action)

Plaintiff alleges that Defendants interfered with her contractual relations which caused her to forego and lose opportunities for career advancement as prospective employers would not consider her due to her termination. Defendants contend that Plaintiff has made only bare allegations which fail to state a claim. In particular, Defendants argue that she fails to allege which Defendant was responsible, how the interference occurred, why it was improper, and how she was harmed.

To recover on a cause of action for intentional interference with prospective contractual relations, Plaintiff must show: (1) the Defendants intentionally interfered with Plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the

---

[7](...continued)

special damages. Id. A statement that is not actionable per se cannot support a defamation claim without evidence of "tangible losses or injury to the plaintiff's property, business, occupation or profession, capable of being assessed monetarily." Id. All libel is actionable per se, but slander is only actionable per se if it relates to one of the following five categories: (1) the commission of a crime of moral turpitude; (2) the contraction of a "loathsome disease"; (3) adultery; (4) lack of chastity; and (5) "unfitness in one's business or profession." Id. at 501. Whether a statement is actionable per se is a matter of law for the court. Id. at 510.

Plaintiff. Crandall Corp. v. Navistar Int'l Transp. Corp., 395 S.E.2d 179 (S.C. 1990)(citations omitted).

Plaintiff fails to allege which Defendant interfered with what prospective contract, how such interference occurred, why the purpose or methods were improper, or how she was harmed. At most, she alleged that she was unable to find a job because she was terminated from SCAS (that in "the course of applying for positions [she] has been advised that her termination has rendered her less employable" - Complaint, ¶ 58). If this was sufficient, it appears that any person who was ever terminated from a job and later not hired for a new job because of his or her past termination would have a claim for tortious interference with prospective contract. This cause of action, however, requires more (as discussed above). Here, Plaintiff has not alleged that Defendants did or said something for an improper purpose or by improper methods to cause a prospective employer to refrain from hiring her. Thus, she fails to state a plausible claim for tortious interference with contract.

## CONCLUSION

Based on the foregoing, it is recommended that Defendants' motion to dismiss (Doc. 5) be **granted**.[8]

Joseph R. McCrorey
United States Magistrate Judge

February 22, 2012
Columbia, South Carolina

---

[8]Plaintiff requests that if Iqbal and Twombly are applied to this action that she be allowed to amend her complaint. Although this may be appropriate, there is no pending motion to amend or proposed amended complaint before the Court at this time.

13