IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jessica E. Sellers, | C/A No.: 3:11-2163-CMC-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| South Carolina Autism Society, Inc., Kim Thomas, and Craig C. Stoxen, CEO, | |
| Defendants. | |

This matter comes before the court on Plaintiff's motion to amend the complaint [Entry #26] against defendants South Carolina Autism Society, Inc. ("Employer"), Kim Thomas, and CEO Craig CC. Stoxen (collectively "Defendants"). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Out of an abundance of caution, the undersigned enters this Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) in light of the dispositive determination subsumed within the recommendation regarding Plaintiff's defamation claim.

I.  Procedural and Factual Background

Plaintiff Jessica E. Sellers ("Plaintiff") filed this action in the Court of Common Pleas for Lexington County, South Carolina on July 7, 2011, seeking recovery for alleged wrongful actions relating to her employment with Employer. Defendants removed the action to this court on August 16, 2011. Plaintiff alleges, inter alia, that she was treated

less favorably than Caucasian employees because of her race (African American) and because she complained about racial discrimination directed to her and other African American employees. Specifically, Plaintiff's original complaint asserted the following causes of action: (1) violation of 42 U.S.C. § 1981; (2) intentional infliction of emotional distress ("outrage"); (3) breach of contract; (4) retaliatory discharge in violation of public policy; (5) defamation (relating to post-employment comments); (6) tortious interference with contract/prospective advantage; and (7) negligence. Compl. [Entry #1-1]. On August 17, 2011, Defendants filed a motion to dismiss all the claims.

The Honorable Cameron McGowan Currie issued an order on March 22, 2012 dismissing the following claims with prejudice: (1) breach of contract against defendants Thomas and Stoxen; (2) outrage against all Defendants; (3) wrongful discharge in violation of public policy against all Defendants; and (4) negligence against all Defendants. [Entry #21 at 12]. Additionally, Judge Currie dismissed the following claims without prejudice and allowed Plaintiff 14 days within which to move to amend her complaint: (1) breach of contract against Employer; (2) defamation against Defendants; and (3) intentional interference with contract/prospective advantage against Defendants. *Id*. Judge Currie denied Defendants' motion to dismiss Plaintiff's claim pursuant to 42 U.S.C. § 1981. *Id*. at 11.

This matter was referred to the undersigned on March 23, 2012. [Entry #23]. On April 5, 2012, Plaintiff filed a motion to amend her complaint to include causes of action for breach of contract against Employer and defamation against Defendants. [Entry #26].

2

Defendants oppose the motion, arguing that the amendments should be denied as futile. [Entry #29]. Plaintiff filed a reply on April 20, 2012. [Entry #30]. This motion having been fully briefed, it is ready for disposition. The undersigned recommends the court grant Plaintiff's motion to amend her breach of contract claim and deny as futile her defamation claim.

II.     Discussion

    A.     Standard of Review

Rule 15(a) provides that a party may amend its pleadings by leave of court or by written consent of the adverse party and that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The courts have interpreted Rule 15(a) in accord with that spirit. *Justice v. Pennzoil Co.*, 598 F.2d 1339, 1354 (4th Cir. 1979); *Frankel v. Kurtz*, 239 F. Supp. 713, 716 (D.S.C. 1965). A motion to amend should be denied only when it would be prejudicial, there has been bad faith, or the amendment would be futile. *HCMF Corp. v. Allen*, 238 F.3d 273, 276–77 (4th Cir. 2001).

An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See e.g., United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). A plaintiff fails to state a viable claim pursuant to Fed. R. Civ. P. 12(b)(6) when the complaint does not contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

B.  Analysis

1.  Breach of Contract Claim

Plaintiff attaches to her complaint several excerpts of the employee handbook and contends that the handbook created promises and obligations from Employer, that she alleges were breached. Employer argues that Plaintiff's claim for breach of contract is barred because the employee handbook contained a conspicuous disclaimer under S.C. Code Ann. § 41-1-110. That statute provides as follows:

> It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee.

S.C. Code Ann. § 41-1-110 (in relevant part).

Employer claims the handbook contained a capitalized, underlined, conspicuous disclaimer on the first page of the handbook that is signed by Plaintiff. In support of its argument, Employer attached to its brief the handbook it contends, and Plaintiff does not dispute, Plaintiff received.[1] The handbook contains an unsigned copy of the disclaimer directly after the handbook cover page. The disclaimer page is numbered as page "i." [Entry #29-12]. Every page of the handbook, including the disclaimer page, contains a

---

[1] The court may take judicial notice of the handbook without changing the standard of review. *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (a document referenced in, but not attached to, a complaint may be considered by the court in ruling on a Rule 12(b)(6) motion if the document is integral to and explicitly relied upon in the complaint and the document's authenticity is not challenged) *cert. denied*, 543 U.S. 979 (2004).

header stating "South Carolina Autism Society – approved 1/20/07." *Id*. Employer also submitted a copy of a disclaimer signed by Plaintiff. [Entry #29-13]. The signed copy of the disclaimer contains a header that reads "South Carolina Autism Society – approved January 21, 2006" and a roman numeral "-ii–" that appears to be a page number. The language of the two disclaimers is otherwise the same.

If the blank disclaimer were determined to constitute the first page of the handbook under S.C. Code Ann. § 41-1-110, Plaintiff signed a different disclaimer page [*See* Entry #29-13]. The disclaimer signed by Plaintiff appears to be labeled as the second page ("-ii–") and is not an exact duplicate of the disclaimer contained in the handbook. Because the disclaimer does not appear to meet the requirements of S.C. Code Ann. § 41-1-110 on its face, at this stage of the proceedings, the undersigned finds that the proposed breach of contract claim is not futile as statutorily barred.

Concluding that the proposed breach of contract claim is not statutorily barred, the undersigned has reviewed the handbook to determine whether it contains mandatory, promissory language such that it may have altered Plaintiff's at-will employment status. "To be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005). General policies of non-discrimination and non-retaliation such as those that state "[i]t is important that individuals are treated fairly" and that the employer "supports an open door-policy" are "not sufficient to constitute an actionable promise." *Cartee v. Wilbur Smith Assocs., Inc.*, No. 3:08-4132-JFA, 2010 WL

1052091 (D.S.C. Feb. 3, 2010). However, mandatory, progressive discipline procedures may constitute enforceable promises. *Hessenthaler,* 616 S.E.2d at 698. "Such procedures typically provide that an employee may be fired only after certain steps are taken. When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id*.

Here, Plaintiff points to various policies contained in the handbook, most notably the language of Employer's disciplinary and dismissal policies. The disciplinary policy states as follows:

> **DISCIPLINARY PHILOSOPHY**
>
> This non-profit uses progressive discipline to ensure staff compliance with performance standards, ethics and conduct. Except in cases of repeated, willful or flagrant violations of these standards, a supervisor will not resort to formal disciplinary measures until informal attempts to correct the problem have failed. If a supervisor finds it necessary to use formal disciplinary measures, it is intended that the discipline be administered fairly without prejudice and only for cause.
>
> Disciplinary actions are of several levels, including oral and written warnings, disciplinary probation, suspension and termination. The frequency and/or severity of misconduct determines which level of disciplinary action is required.
>
> Progressive discipline is not required for all offenses. The non-profit reserves the right to terminate staff members for commission of serious infractions regardless of the progressive discipline guidelines or counseling.

[Entry #26-5]. Additionally, the handbook also contained a provision on dismissal by Employer:

> **DISMISSAL**
>
> Dismissal occurs when other disciplinary action has failed to achieve

improvement or when the staff member commits a serious offense. Prior to dismissal, the President and CEO should assure that staff member has been properly counseled in writing concerning any deficiencies in performance, given sufficient time to correct the deficiencies, and inform that failure to correct them may result in termination.

[Entry #26-4 at 2].

After a review of the handbook language, the court cannot determine as a matter of law at this stage in the proceedings whether the handbook does or does not create an enforceable contract. "The issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or capable of more than one inference." *Hessenthaler,* 616 S.E.2d at 697. Here, Plaintiff appears to have alleged sufficient facts in her complaint to support a breach of contract claim to withstand a motion to dismiss. Therefore, the undersigned cannot conclude that the proposed amendment to add a breach of contract claim would be futile, and it is recommended that Plaintiff's motion to amend her complaint be granted with regard to her breach of contract claim against Employer.

   2.  Defamation Claim

In order to state a defamation claim, Plaintiff must allege facts showing: (1) a false and defamatory statement concerning her; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm (i.e. slander per se) or special damages caused by the publication. *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 506 (S.C. 1998). Plaintiff makes the following factual allegations in support of her revised

defamation claim:

- Defendants chose to terminate and disseminate to the public that Plaintiff intentionally failed to assist clients, failed to perform duties and was incompetent.

- Defendant obtained negative written statements from white employees about Plaintiff's alleged attitude and lack of ability to perform her job, and presented these false statements to administrative agencies and upon information and belief to others.

- Plaintiff asserts that defamatory statements and materials were solicited by Defendant from Mr. Williams (Board Member), Barbara MacWilliam, Debbie Pittman, and Elizabeth Talbot.

- Plaintiff is labeled as lazy, unhelpful, incompetent, having a poor attitude, hostile, rude, embarrassing, and unwilling to perform her duties or assist others in the written materials that were disseminated.

- At no time prior to her complaints regarding unequal treatment was Plaintiff characterized in her written reviews as being other than a good worker, a team player and one who took good care of her clients.

- Upon information and belief, the Defendant and specifically Thomas solicited Plaintiff's client list after her termination asking for negative information about Plaintiff.

- By contacting Plaintiff's clients, revealing her termination and seeking negative information Defendant has besmirched Plaintiff's reputation.

- Upon information and belief the only client to report negatively was Williams, who was also a Board Member of the Defendant.

- Defendant has disseminated the statement of Mr. Williams stating that he was dissatisfied with Plaintiff and that she was a poor worker.

- Plaintiff never met Mr. Williams, received a call or an email from him and had not heard from him or his family any dissatisfaction in the 2 years she serviced his family.

- As such Plaintiff submits that the allegations of her lack of fitness for her position are untrue. [Email from Mr. Williams to Thomas] attached as Exhibit 8.

- Upon information and belief the Defendant, via Ms. Thomas, procured Mr. Williams statement, given his relationship with the Employer as a Board Member, post termination, to bolster the dismissal of the Plaintiff.

- The letter from Mr. Williams was disseminated by the Defendant and Ms. Thomas to State and Federal Agencies, and upon information and belief others.

Proposed Am. Compl. ¶¶ 100–112. [Entry #26-2].

In asserting that the amendment would be futile, Defendant argues that these allegations do not support a cause of action for defamation because the majority of the allegations do not set forth an alleged defamatory statement and all of the allegations lack the required specificity. In response, Plaintiff argues that (1) Defendants have made disparaging remarks about her, although she does not specify any particular statements, dates, or speakers, and (2) Defendants have besmirched her reputation by revealing her termination and "seeking negative information."

The undersigned agrees with Defendants. The allegations of the proposed amended complaint only allege negative statements were "gathered" or "solicited" or that she was negatively "labeled." Such allegations lack specificity regarding any particular statement, including an alleged speaker, date or timeframe, or to whom the statements were published. The only allegation containing specificity concerns an email communication between Thomas and Williams, a board member of Employer. *See* Email at Entry #26-10. However, Plaintiff has made only speculative assertions that the email was disseminated and has failed to name any specific entity to which it was allegedly disseminated. Additionally, the email itself is privileged and cannot constitute defamation because it is a statement regarding employment between parties who have

9

corresponding interests, as Williams is a board member of Employer and Thomas is the Director of Service Coordination for Employer. *Id.*; *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 749 (S.C. App. 2001) (a communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable). Therefore, the undersigned recommends Plaintiff's motion to amend the complaint be denied with regard to her defamation claim.

III.     Conclusion

For the foregoing reasons, the undersigned recommends that Plaintiff's motion to amend her complaint be granted with regard to her breach of contract claim and denied as futile with regard to her defamation claim.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

June 21, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).